UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LA TOIJA SNODGRASS, | ) | |
| | ) | No. 1:13-cv-01206-JMS-TAB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CASHCALL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ACTION AND COMPEL ARBITRATION**

COMES NOW Plaintiff, La Toija Snodgrass ("Plaintiff"), through her attorneys, Krohn & Moss, Ltd., and files her Response in opposition to Defendant's, Cash Call, Inc. ("Defendant"), Motion to Stay Action and Compel Arbitration.

**I.      INTRODUCTION**

On July 29, 2013, Plaintiff filed her Complaint against Defendant, alleging Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.  See* Plaintiff's Complaint; Document No. 1.  In this action, Plaintiff alleged that Defendant placed telephone calls to Plaintiff seeking and attempting to collect on an alleged debt.  *See id.* at ¶ 8.  Defendant places collection calls to Plaintiff's cellular telephone at phone number (303) 359-0709.  *See id.* at ¶ 9. Defendant places collection calls to Plaintiff from phone numbers including, but not limited to, 803-335-1437, 317-565-1393, 313-556-2837, 601-326-1569, 215-933-3250, 704-764-1067, 404-921-3589, 918-716-9384, and 678-818-0207.  *See id.* at ¶ 10.  Per its prior business practices, Defendant's calls were placed with an automated dialing system ("auto-dialer").  *See id.* at ¶ 11.  On

May 30, 2013 at approximately 4:07 P.M. Eastern Time, Plaintiff spoke with Defendant's representative, "Ms. McGriff." *See id.* at ¶ 12. In the course of the telephone conversation on May 30, 2013, Plaintiff requested that Defendant cease placing collection calls to her cell phone and requested that Defendant correspond by mail only. *See id.* at ¶ 13. Plaintiff revoked any consent, explicit, implied, or otherwise, to call her cellular telephone and/or to receive Defendant's calls using an automatic telephone dialing system during the telephone call on May 30, 2013. *See id.* at ¶ 14. Despite Plaintiff's request to cease, Defendant placed at least sixty-eight (68) automated collection calls to Plaintiff. *See id.* at ¶ 15. Based on the foregoing facts, Defendant violated the TCPA as follows:

1. Defendant's actions alleged *supra* constitute numerous negligent violations of the TCPA, entitling Plaintiff to an award of $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).
2. Defendant's actions alleged *supra* constitute numerous and multiple knowing and/or willful violates of the TCPA, entitling Plaintiff to an award of $1,500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

*See id* at ¶ 1-2.

On September 19, 2013, Defendant filed its Motion to Stay Action and Compel Arbitration. *See* Document No. 9. On September 19, 2013, Defendant also filed its Brief/Memorandum in support of its Motion to Stay Action and Compel Arbitration ("Motion"). *See* Document No. 10. Defendant's Motion is based upon an arbitration agreement contained within a pre-printed, boilerplate, and multi-page document titled Western Sky Loan Agreement (the "Note"). Defendant does not present any evidence or documentation showing that Plaintiff signed or executed any document consenting to arbitration nor does Defendant present any evidence or documentation that the arbitration clause was even brought to Plaintiff's attention upon receipt of the multi-page Note. In fact, Defendant appears to engage in the practice of specifically providing Plaintiff and other

consumers with the Note documentation without informing its customer of the arbitration clause buried in the multipage document.  Furthermore, the arbitration clause does not even mention the Telephone Consumer Protection Act or consider that violations thereof are to be covered by the arbitration clause.

## II.      ARGUMENT

The allegations contained in Plaintiff's Complaint are not issues contemplated within the scope of the purported arbitration provision.  Furthermore the provision was not bargained for and is unconscionable.  Thus, Defendant's motion must be denied.

### A.      Plaintiff did not Agree to Arbitrate her Dispute with Defendant.

The Court should deny Defendant's Motion as the parties did not agree to arbitrate the violations of the Telephone Consumer Protection Act claims pled by Plaintiff which are clearly collateral to the Note.  *See Mitsubishi Motors Corp.v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Since the decision to arbitrate is contractual, and Plaintiff did not agree to have any claims related to Defendant or its unlawful telephone practices arbitrated, Plaintiff is entitled to have this Court resolve her dispute.  *See Sphere Drake Insurance Ltd. v. All American Insurance Co.*, 256 F.3d 587, 590 (7th Cir. 2001) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *see also United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

### B.      Plaintiff's TCPA Claims are Collateral to the Arbitrable Claims in the Arbitration Clause of the Note.

At its most fundamental level, the arbitration clause must be analyzed within the context of the parties' agreement and the claims at issue pled by Plaintiff.  This analysis unquestionably reveals that the alleged unlawful telephone practices in the case at bar did not arise from any issue pertaining to the parties' underlying agreement.  Further, nowhere does the arbitration clause or the

Note speak of unlawful conduct by Defendant, in violation of the TCPA. Both are equally silent to any reference regarding the type of conduct detailed in Plaintiff Complaint in the instant case at bar.

A case from the United States Second Circuit Court of Appeals, *Collins & Aikman Products Co. v. Building Systems, Inc.*, illustrates that the unlawful debt collection conduct of Defendant must be deemed to fall outside the arbitration clause. *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16 (2d Cir. 1995). In *Collins*, the Second Circuit analyzed whether particular claims fell within the scope of an arbitration clause similar to the case at bar which covered any claim or controversy arising out of or relating to the agreement. *Collins*, 58 F.3d at 18. In assessing whether the allegations were within the scope of the arbitration provision, the court found that the law does not require parties to arbitrate when they have not agreed to do so. *Id*. at 19 *quoting Volt Info Sciences, inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). Further, in determining whether a claim is within the scope of the arbitration clause, the court looked to the conduct alleged in the complaint itself. *Id*. at 20-21. "*If the allegations underlying the claims 'touch matters' covered by the parties' … agreements*, then those claims must be arbitrated, whatever the legal labels attached to them." *Id*. at 21, *quoting*, *Genesco, Inc. v. T. Kakiuchi Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987) (emphasis in original).

The *Collins* court held:

> [I]f the arbitration clause is broad, there arises a presumption of arbitrability; **if, however, the dispute is in respect of a matter that, on its face, is clearly collateral to the contract**, then a court should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement; **claims that present no question involving the construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement**.

*Id.* at 23 (emphasis added).

**D.    The Arbitration Clause Does Not Encompass Plaintiff's TCPA Claims in the Instant Action.**

Defendant's Motion to Compel also fails because Plaintiff's TCPA claim in this case does not arise from the contract containing the arbitration clause and is not subject to it. When a valid agreement to arbitrate exists, courts routinely require arbitration of tort claims that arise from the contract between the parties. Courts do not, however, require arbitration of claims that arise independently of the contract between the parties. *See AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (arbitration is a matter of contract and that a party cannot be required to submit to arbitration any suit it has not agreed to arbitrate). Even broad language in an arbitration agreement (*e.g.*, "any and all disputes") does not make disputes unrelated to the contract arbitrable. Various courts have noted the absurdity of arguing that claims unrelated to a contract nonetheless are arbitrable thereunder. For example, "when a tort claim constitutes an 'independent wrong from any breach' of the contract it 'does not require interpretation of the contract and is not arbitrable …'" *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011). And, "a tort claim is not arbitrable just because it would not have arisen 'but for' the parties' agreement." *Id.*

Finding that the dispute at issue involved a tort based on state and maritime tort law, and did not turn on an interpretation of "any clause in the contract" or the defendant's "performance under the contract," the Ninth Circuit found the dispute "not arbitrable." *Id.* In another case, the defendant argued that a contractual arbitration agreement requiring arbitration of any "common law claims, based upon contract, tort, fraud, and other intentional torts" and of "claims based upon a violation of any state or federal constitution, statute or regulation" allowed arbitration of such claims whether they related to the underlying agreement or not. *Smith v. Steinkamp*, 318 F.3d 775, 776 (7th Cir. 2003). The Seventh Circuit rejected the argument, stating that, if the arbitration provision is

> read as standing free from any loan agreement, absurd results ensue, for example that if [defendant] murdered [plaintiff] in order to discourage defaults and her survivors brought a wrongful death suit … [defendant] could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of [defendant] picked [plaintiff's] pocket when she came in to pay back the loan, and [plaintiff] sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference that the conversion had occurred in [plaintiff's] home 20 years after her last transaction with [defendant].

*Smith*, 318 F. 3d at 777.  The Tenth Circuit has noted and rejected the same absurdity. It stated that;

> if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship.

*Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995).

State courts considering the issue have similarly rejected attempts to read arbitration clauses as unlimited in scope.  *See RN Solution, Inc. v. Catholic Healthcare West,* 81 Cal. Rptr. 3d 892, 902 (Cal. App. 2008) ("even the broadest arbitration clauses obviously cannot cover every type of dispute that might arise"); *In re Kaplan Higher Educ. Corp*., 235 S.W.3d 206 (Tex. 2007) ("[c]laims must be brought on the contract, and must be arbitrated pursuant to the contract's arbitration clause, if liability arises solely from the contract, but claims can be brought in tort, and in court, if liability arises from general obligations imposed by law"); *Aiken v. World Finance Corp. of South Carolina,* 644 S.E.2d 705, 709 (S.C. 2007) (the "most broadly-worded arbitration agreements still have limits founded in general principles of contract law," therefore refusing "to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings"); *Seifert v. U.S. Home Corp.,* 750 So. 2d 633, 638 (Fla. 1999) ("the mere fact that the dispute would not have arisen but for the existence of the contract and

consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement"); *Fountain Finance, Inc. v. Hines,* 788 So. 2d 155, 158 (Ala. 2000) ("[t]o hold otherwise would allow persons signing broad arbitration provisions to commit intentional torts against one another, which torts are outside the scope of their contemplated dealings, without concern that they might have to answer for their actions before a jury of their peers").

Tort claims may be submitted to arbitration, but the tort must be arbitrable—that is, it must relate to the contract containing the arbitration provision. *See, e.g.,* 21 WILLISTON ON CONTRACTS § 57:31 (4th ed.) ("whether a tort claim is sufficiently related to a contract between the parties so as to be arbitrable depends on the factual allegations in the complaint instead of the legal labels attached to the causes of action, but only to the extent that an action formally labeled a tort is in essence a breach of contract claim or based on a breach of contract"). The "test for whether a tort claim 'relates to' a contract depends on whether the claim could be maintained without reference to the contract." *Id*.

Although Defendant states in conclusory fashion that the arbitration agreement encompasses the issues in dispute, it quite clearly does not.  Plaintiff alleges unlawful conduct by Defendant, which ultimately led to Plaintiff's cause of action for violations of the TCPA.   *See* Plaintiff's Complaint; Document No. 1.  On the other hand, the arbitration clause provides for arbitration of claims as follows:

> **Agreement to Arbitrate.**  You agree that any dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer disputes rules and the terms of this Agreement.

*See* Exhibit A-1 to Defendant's Brief; Document 10-2 at page number 4.  Nowhere in the language of the provision is there any indication that unlawful debt collection activities would be subject to arbitration.

Plaintiff's cause of action is about Defendant's unlawful conduct.  Had Plaintiff filed a case against Defendant contesting the amount of debt owed or Defendant's refusal to remove a disputed charge, such a claim would arise from the agreement, and thus be subject to arbitration.  Similarly, had Defendant filed a claim against Plaintiff for non-payment, such would also fall within the scope of the arbitration clause.  However, Plaintiff's Complaint does not present an issue involving the parties' rights and obligations under the Note.  But for Defendant's violation of the law, no Complaint would have been filed.  Further, Defendant's conduct was not contemplated at the time the Note was entered into as there was no way for Plaintiff to anticipate that Defendant would violate the law and Plaintiff's rights by using an auto-dialer in violation in the TCPA.  Thus, Defendant's actions giving rise to Plaintiff's Complaint clearly fall beyond the scope of the arbitration provision.

If this Court were to accept Defendant's interpretation, any action Defendant takes against Plaintiff to try and collect this debt would be subject to binding arbitration.  Under Defendant's interpretation, if Defendant's employee shot Plaintiff in the leg in an attempt to collect the alleged debt, any subsequent claim brought by Plaintiff for personal injuries could only be brought through arbitration due to the "broad" reach of the arbitration clause.   As nonsensical as it would be to require Plaintiff to arbitrate a claim for a gunshot wound, it would be equally nonsensical to allow Defendant to shield itself under the so-called "broad" language of the arbitration clause by engaging in other unlawful telephone practices.   This Court should not be required to weigh the severity of the unlawful telephone practices to determine if the unlawful action is subject to arbitration.  Rather,

as neither the Note nor the arbitration clause itself speaks to unlawful telephone practices, any

unlawful telephone activity must be deemed as collateral to the Note and not subject to arbitration.

### E.  The Arbitration Agreement is Unenforceable Because the Text of the TCPA Establishes that Congress Contemplated a Judicial Forum for the Resolution of TCPA Claims.

Even assuming, *arguendo*, this Court finds that the Arbitration Clause somehow

encompasses Plaintiff's TCPA Claims in the instant action, it must also consider whether any federal

statute or policy renders the claims nonarbitrable.  *See Mitsubishi Motors Corp v. Soler Chrysler-*

*Plymouth, Inc.,* 473 U.S. 614, 628 (1985); *see also First Options of Chicago, Inc., v. Kaplan,* 514

U.S. 938, 944 (1995).  The TCPA does exactly that.  By repeatedly using the word "court" and by

including specific jurisdictional provisions within the statute, Congress specifically directed that

TCPA claims should be resolved in a judicial forum.

The presumption of arbitrability is overcome by a clear declaration of congressional intent

that TCPA claims should be brought in a court of law.  The party opposing arbitration meets its

burden by showing that Congress intended in a separate statute to preclude a waiver of judicial

remedies or that such a waiver of judicial remedies inherently conflicts with the underlying purposes

of that other statute.  *See Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987).

Congressional intent is deducible from a statute's text and legislative history or from an inherent

conflict between arbitration and the statute's underlying purposes. *Id.* at 227.  *See also Mitsubishi*,

473 U.S. at 628 ("Having made the bargain to arbitrate, the party should be held to it **unless**

**Congress itself has evinced an intention to preclude a waiver of judicial remedies for the**

**statutory rights at issue**") (emphasis added).

For example, in *Alexander v. U.S. Credit Management, Inc.*, 384 F. Supp. 2d 1003 (N.D.

Tex. 2005), the court declared the disputed arbitration clause void under the plain language of the

Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, because the "CROA's non-waiver of rights provision, combined with its proclamation of a consumer's right to sue, represent precisely the expression of congressional intent required by *Mitsubishi* and its progeny." 384 F. Supp. 2d at 1011.  Applying standard legal usage, it emphasized that when a statute identifies "a right to sue," it is not simply providing a right "to some form of dispute resolution" and that "the act of suing in a court of law is distinctly different from arbitration":

> One cannot satisfy the right to sue protected by CROA by replacing it with an opportunity to submit a dispute to arbitration. *See generally Morrison v. Colo. Permanente Med. Group, P.C.,* 983 F.Supp. 937, 944 (D.Colo.1997) ("[C]ases and statutes discuss consistently the terms 'arbitration' and 'civil action' in a manner that leaves no doubt that arbitration is a creature separate from, and not just a form of, a civil action."). There is no evidence that Congress intended courts to interpret "right to sue" in a way that does not conform with standard legal usage.
>
> To sue is "[t]o institute a lawsuit against (another party)." Black's Law Dictionary 1473 (Bryan A. Garner ed., 8th ed., 2004). For "lawsuit," Black's directs us to "suit," *id.* at 905, which is defined: "[a]ny proceeding by a party or parties against another *in a court of law.*" *Id.* at 1475 (emphasis added). "Suit" is "[a]lso termed *lawsuit; suit at law* ...." *Id.* "Litigation," an oft-used synonym for bringing suit, is defined: "The process of carrying on a lawsuit ..., [a] lawsuit itself...." *Id.* at 952.
>
> By contrast, "arbitration" is "a method of dispute resolution involving one or more neutral third parties who are usu[ally] agreed to by the disputing parties and whose decision is binding...." *Id.* at 112; *see also General Motors Corp. v. Pamela Equities Corp.,* 146 F.3d 242, 246 (5th Cir.1998) ("Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard."). Arbitration is one of several mechanisms of "alternative dispute resolution," which is "[a] procedure for settling a dispute *by means other than litigation,* such as arbitration or mediation." *Id.* at 86 (emphasis added).
>
> Corpus Juris Secundum emphasizes that "[a]rbitration is not a judicial proceeding either at common law or under statutes. It is a proceeding

> separate from litigation based upon its underlying purpose of encouraging dispute resolution *without resort to the courts,* and may be characterized as an alternative to litigation." 6 C.J.S. Arbitration § 2 (June 2005) (emphasis added) (citations omitted).

*Id.*

The court anticipated, and rejected, the argument that "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits them to their resolution in an arbitral, rather than a judicial forum." *Id.* at 1012.  It explained that "such substantive rights are only suitably addressed in arbitration in the absence of congressional intent 'to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.* ("Having found CROA to express such an intent, to then argue that a congressionally mandated 'right to sue' is met equally either by litigation in court or by submittal to arbitration is to obliterate the distinction between these fora.  This Court interprets a 'right to sue,' as contrasted with a right to make a claim, as a right to bring litigation *in court.*") (emphasis in original).  Notably, legislative history reveals a direct link between this "right to sue" and the jurisdictional provision of the CROA.  *See id.*

*Alexander* makes clear that a federal statute or policy can render a claim nonarbitrable if the language of the statute shows that Congress contemplated a judicial, as opposed to an arbitral, forum. The TCPA contains clear language to that effect. Section 227 addresses civil liability and mirrors the language of the CROA's jurisdictional provision scrutinized in *Alexander*.  It includes numerous references to "the court." *See, e.g.*, 47 U.S.C. § 227(b)(3) ("A person or entry may, if otherwise permitted by the laws of rules of the court of a State bring in an appropriate court of that state"); *id.* ("If the court finds the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may in its discretion, increase the amount of the away to an amount equal to not more than 3 times the amount available under subparagraph (B)

of the paragraph"). These repeated references to "the court" are important. Technical compliance with statutory language is required under rules of statutory interpretation.

## IV.   CONCLUSION

As discussed *supra*, the filing of Plaintiff's Complaint before this Court is proper as the allegations in Plaintiff's Complaint are beyond the scope of the arbitration clause. Furthermore assuming, *arguendo*, this Court finds that the Arbitration Clause somehow encompasses Plaintiff's TCPA Claims in the instant action, it must also consider whether any federal statute or policy renders the claims nonarbitrable. The presumption of arbitrability is overcome by a clear declaration of congressional intent that TCPA claims should be brought in a court of law. Accordingly, this Honorable Court should deny Defendant's Motion to Compel Arbitration.


DATE: September 30, 2013                          RESPECTFULLY SUBMITTED,

                                                  By:/s/   Ryan Lee
                                                        Ryan Lee
                                                        Krohn & Moss, Ltd.
                                                        10474 Santa Monica Blvd., Suite 405
                                                        Los Angeles, CA 90025
                                                        Ph: (323) 988-2400 ext 241
                                                        Fax: (866) 861-1690
                                                        rlee@consumerlawcenter.com
                                                        Attorneys for Plaintiff,
                                                        LA TOIJA SNODGRASS

## PROOF OF SERVICE

I am employed in Los Angeles, California.  I am over the age of 18 and not a party to the within action.  My business address is 10474 Santa Monica Suite 405, Los Angeles, California 90025.

On September 30, 2013, I served the following documents:  **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

On the parties listed below:

**James M. Hinshaw**
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
(317) 635-8900
Fax: (317) 236-9907
Email: jhinshaw@bgdlegal.com

By the following means of service:

[X]    **BY ELECTRONIC SERVICE:** the documents above were delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service.

[X]    **BY ELECTRONIC MAIL:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above.  I am readily familiar with the firm's Microsoft Outlook e-mail system, and the transmission was reported as complete, without error.

[X]    **BY MAIL:** I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am readily familiar with the firm's practice for collection and processing correspondence for mailing.  Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    **FEDERAL:** I declare under penalty of perjury under the laws of Illinois that the above is true and correct.

Executed on September 30, 2013, at Los Angeles, California

By: /s/ Ryan Lee
Ryan Lee